UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, as subrogee of George Adams,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No. 1:20-cv-00040-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant General Motors, LLC's Motion for Sanctions Due to Spoliation. (Dkt. 49.) GM contends that Plaintiff, State Farm Fire and Casualty, wrongfully destroyed important evidence, namely, the vehicle at issue in the lawsuit, and that the Court should impose sanctions on Plaintiff. The Court will grant the motion for sanctions and impose the sanction of dismissal.

## BACKGROUND

This subrogation lawsuit arises out of a fire at the home of Plaintiff's insured, George Adams. Plaintiff alleges that the fire was caused by Adams' 2007 GMC Acadia (the vehicle) catching fire.

On May 4, 2019, Adams drove the vehicle from Boise, Idaho to his home in Mountain Home, Idaho and parked the vehicle in the garage. A short time later, a fire started in the garage, ultimately spreading to the house, and causing significant damage to Adams' house, business, and other property. Adams filed a claim for the property damage with his insurer, State Farm Fire and Casualty (State Farm Fire), and was paid insurance benefits. Adams' vehicle was separately insured by State Farm Mutual Automobile Company (State Farm Auto).

On May 6, 2019, a State Farm Fire representative visited Adams's house. The State Farm Fire representative had a telephone conversation with a State Farm Auto claims representative regarding the vehicle and received permission to allow State Farm Fire's inspector to inspect the vehicle. Dkt. 50 at 4. The State Farm Fire representative also requested that the vehicle not be sent to Insurance Auto Auctions, Inc. (IAA) in Boise, but to a different holding facility.

State Farm Fire's inspector, Shane Hartgrove, prepared a report, including three photos of the vehicle, and "concluded that the fire must have been caused by 'non-specific electrical failure' at the connection point between the positive battery cable and the fuse block" of the vehicle. (Dkt. 49-1 at 4.)

On May 8, 2019, State Farm Auto towed the vehicle from Adams' residence to IAA. Dkt. 49-1 at 4. On May 22, 2019, Hartgrove traveled to IAA to inspect the

vehicle again. (*Id.*) He prepared a Fire Cause Analysis Report for State Farm Fire on May 24, 2019. (*Id.*)

On either May 27, 2019, or June 28, 2019, the vehicle was sold at a salvage auction by IAA. (*Compare Def.'s Br.*, Dkt. 49-1 at 4, *with Pl.'s Resp.*, Dkt. 50 at 4.) State Farm Fire alleges that it had no knowledge of the sale at the time, and that it was informed sometime after June 28 that the vehicle had been sold. (Dkt. 50 at 4-5.) On August 21, 2019, almost a month after the vehicle had been sold, State Farm Fire notified GM of its claim for subrogation.

## ANALYSIS

### A. The sale of the vehicle constitutes spoliation of evidence.

The sale of the vehicle that is the subject of this lawsuit constitutes spoliation of evidence under federal law. "Spoliation of evidence is the destruction or significant alteration of evidence, or the failure to properly preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Balla v. Idaho State Bd. of Corr.*, 119 F. Supp. 3d 1271, 1282 (D. Idaho 2015). Where, as here, spoliation of evidence occurs before the litigation is filed, the sanctions are governed by the inherent power of the Court to make evidentiary rulings in response to the destruction of relevant evidence. *Performance Chevrolet, Inc. v. Market Scan Info. Sys., Inc.*, No. CV-04-0244-BLW, 2006 WL 1042359, at *1 (D. Idaho Apr. 18, 2006); *see also Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir.

1993).

The Ninth Circuit "has not set forth a precise standard for determining when spoliation sanctions are appropriate," but "the majority of trial courts have adopted the following test: (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the [evidence] w[as] destroyed with a culpable state of mind; and (3) the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Bell v. City of Boise*, No. 1:09-cv-540-REB, 2015 WL 13778741, at *2 (D. Idaho Aug. 23, 2015) (quoting *Justice v. Rockwell Collins, Inc.*, No. 3:12-CV-01507-AA, 2015 WL 4507445, at *8 (D. Or. July 22, 2015)) (cleaned up). The party seeking spoliation sanctions has the burden of establishing the elements. *Id.*

### 1. State Farm Fire had an obligation to preserve the vehicle.

With respect to the first element, "[a] party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence." *Brown v. Reinke*, No. 1:12-cv-262-BLW, 2016 WL 107926, at *5 (D. Idaho Jan. 8, 2016). The duty to preserve evidence exists during litigation, and during the period before litigation "when a party should reasonably know that evidence may be relevant to anticipated litigation." *Id.*

The Court finds, and State Farm Fire does not dispute, that State Farm Fire

had an obligation to preserve the vehicle at the time it was sold at the salvage auction. (*See Pl.'s Resp.*, Dkt. 50 at 7.) Nonetheless, State Farm Fire argues that this element is not met because it did not have *control* over the vehicle at the time it was sold and that, instead, it was State Farm *Auto* that had control over the vehicle. State Farm *Fire* argues that it therefore cannot be sanctioned for spoliation of the evidence.

The Court is not persuaded by this argument. State Farm's own corporate disclosure statement in this case failed to distinguish between State Farm Fire and State Farm Auto. (*See Pl.'s Corporate Disclosure Statement*, Dkt. 7.) Indeed, the corporate disclosure statement was titled "Plaintiff State Farm Mutual Automobile Insurance Company's Corporate Disclosure Statement," and the document failed to mention State Farm Fire and Casualty at all. *Id.* Further, State Farm's website identifies State Farm Mutual Automobile Insurance Company as "the parent company of several affiliates and subsidiaries that provide property and life insurance," including State Farm Fire and Casualty.[1] State Farm cannot benefit from destruction of crucial evidence simply because it was a separate corporate

---

[1] *Fast Facts*, STATE FARM, https://www.statefarm.com/about-us/company-overview/company-profile/fast-facts (last visited May 27, 2021); *see also State Farm Companies*, STATE FARM, https://www.statefarm.com/about-us/company-overview/company-profile/state-farm-companies (last visited May 27, 2021).

entity that had control of the vehicle at the time. This is particularly true when State Farm itself discusses the two entities interchangeably.

Furthermore, even assuming that their relationship is such that State Farm Auto's actions cannot be directly attributed to State Farm Fire, the latter still had indirect control over the vehicle. "[C]ourts have extended the affirmative duty to preserve evidence to instances where that evidence is not directly within the party's custody or control so long as the party has access to, or indirect control over, such evidence." *Cyntegra, Inc. v. Idexx Labs., Inc.*, No. CV 06-4170 PSG (CTx), 2007 WL 5193736, at *5 (C.D. Cal. Sept. 21, 2007); *cf. R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 24 (S.D.N.Y. 2010) ("Evidence in a party's 'control' has been interpreted to mean evidence that the party has the legal right, authority, or practical ability to obtain by virtue of its relationship with the party in possession of the evidence.").

In *Cyntegra*, the court held that the plaintiff had sufficient control over documents stored on third-party computer servers, noting that "[b]ecause plaintiff could have anticipated the possibility of litigation by this time, it had an affirmative duty to . . . preserve the evidence. Plaintiff cannot bypass this duty by abandoning its documents to a third-party and claiming lack of control." *Cyntegra, Inc.*, 2007 WWL 5193736, at *5. The *Cyntegra* court stressed that "[r]eleasing

Plaintiff from sanctions when it could have, but chose not to save information would undermine the discovery process." *Id.*

Similarly, releasing State Farm from sanctions here where it could have, but chose not to, place a hold on the vehicle would undermine the discovery process. (*See Affidavit of IAA Representative*, Dkt. 50-3 at 1 ("Our records do not indicate that a hold to not sell the vehicle was ever placed on this vehicle prior to the sale.").) Regardless of which State Farm corporate entity made the decision to bring the vehicle to IAA, State Farm Fire indisputably knew that it was there and took no action to preserve it. Accordingly, the Court finds that GM has met its burden in proving the first element of its spoliation of evidence claim.

### 2. State Farm Fire had the requisite state of mind.

GM has also met its burden in proving that State Farm was sufficiently culpable. As a threshold matter, the parties disagree about whether the federal standard or the Idaho standard should govern the culpability determination. The Ninth Circuit has instructed that sanctions for spoliation may be imposed upon "simple notice of potential relevance to the litigation," and a finding of bad faith is not required. *Glover*, 6 F.3d at 1329. In contrast, Idaho law requires a finding of bad faith and "the merely negligent loss or destruction of evidence is not sufficient to invoke the spoliation doctrine." *Courtney v. Big O Tires, Inc*, 139 Idaho 821, 824 (2003).

As this Court has previously held, where "spoliation occurs before the litigation is filed, the sanctions are governed by the inherent power of the Court to make evidentiary rulings in response to the destruction of relevant evidence." *Performance Chevrolet*, 2006 WL 1042359, at *1. To the extent that State Farm invites the Court to change its position on this issue, the Court declines. Thus, federal law on spoliation applies and a finding of bad faith is not required.

There is no dispute that State Farm had notice that the vehicle was relevant to the litigation, yet State Farm caused the vehicle to be brought to an auto auctions facility and failed to take any action to prevent it from being sold at auction. "As a large insurance company, Plaintiff is a sophisticated litigant aware of its obligations to preserve relevant evidence." *State Farm Fire & Cas. Co. v. Broan Mfg. Co.*, 523 F. Supp. 2d 992, 998 (D. Ariz. 2007). Therefore, the Court finds that the vehicle was destroyed with the required state of mind.

### 3. The vehicle was relevant to the claims at issue in the case.

Finally, there is no dispute that the vehicle was relevant to both parties' claims and defenses in the case. *See Def.'s Br.*, Dkt 50 at 8. Accordingly, the Court finds that GM has met its burden in proving that spoliation sanctions are appropriate.

### B. The appropriate sanction is dismissal.

Because the Court finds that sanctions are appropriate, the remaining

question is the severity of the sanction. GM urges three possible sanctions: a non-rebuttable adverse inference, exclusion of State Farms' evidence regarding the vehicle, or outright dismissal of the case. However, it argues that State Farm's destruction of evidence warrants the severest possible sanction: dismissal. The Court agrees.

The Court has wide discretion in imposing sanctions, which "can range in severity from minor sanctions, such as awarding attorneys' fees, to more severe sanctions including permitting a jury to draw an adverse inference against a party responsible for the destruction of evidence, ordering the exclusion of evidence, or even dismissal of claims." *Dickinson Frozen Foods, Inc. v. FPS Food Process Solutions Corp.*, No. 1:17-cv-519-DCN, 2019 WL 2236080, at *6 (D. Idaho May 21, 2019). At the end of the day, the choice of an appropriate sanction "must be determined on a case-by-case basis, and should be commensurate to the spoliating party's motive or degree of fault in destroying the evidence and the degree of prejudice suffered by the movant." *Balla*, 119 F. Supp. 3d at 1282 (citation and internal quotation marks omitted).

A court considering dismissal as a sanction for a party's spoliation of evidence must weigh several factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of

prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995). For dismissal to be proper, the conduct must be due to "willfulness, fault, or bad faith." *Id.*

"A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the evidence was potentially relevant to the litigation before it was destroyed." *Broan Mfg. Co.*, 523 F. Supp. 2d at 996 (citing *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)). As previously discussed, there is no dispute that State Farm knew that the vehicle was relevant to potential litigation. Despite that knowledge, it caused the vehicle to be taken to IAA where it was sold at a salvage auction and failed to place any type of hold on the vehicle. The Court finds that State Farm's conduct was willful.

The first and second *Anheuser-Busch* factors support dismissal where the destruction of evidence "obscures the factual predicate of the case and consumes months of sanction-related litigation." *Broan Mfg. Co.*, 523 F. Supp. 2d at 997 (citing *Leon*, 464 F.3d at 958 n.5). In *Broan*, the court found that these two factors weighed in favor of dismissal where "Plaintiff's spoliation of the fire scene obscures and affects the very heart of the matter in dispute: whether Defendant's

fan caused the fire." *Id.* Moreover, the *Broan* court noted that "the Court has spent significant resources investigating and resolving the spoliation issues." *Id.*

Here too, the sale of the vehicle affected the very heart of the dispute: whether the vehicle caused the fire. GM cannot now discover any facts regarding the vehicle beyond the photographs taken by State Farm and the report prepared by State Farm's inspector. In essence, State Farm's actions forces GM to defend itself with one hand tied behind its back. Additionally, the Court has spent significant time resolving this dispute. The first two *Anheuser-Busch* factors thus support dismissal.

The third factor requires consideration of the risk of prejudice to GM. The prejudice inquiry " 'looks to whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case.' " *Leon*, 464 F.3d at 959 (quoting *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 604 (9th Cir. 1988)).

In *Broan*, the court noted that "the origin and causes of the fire would be determined through expert witnesses" and that the spoliation of evidence deprived Defendant's experts "of the ability to determine whether the evidence would have supported their theory of the case." *Broan Mfg. Co.*, 523 F. Supp. 2d at 997. Further, evidence of the fire scene was "limited to that which Plaintiff chose to

preserve," and Defendant was unable to conduct an independent investigation. *Id.* The court thus found that the spoliation "threatens to interfere with the rightful decision of the case by preventing full development of the alternative theories of causation," and that the sanction of dismissal was warranted. *Id.*

Here, as in *Broan*, the defendant (GM) is severely prejudiced by the inability to conduct its own investigation to determine the cause of the fire. The fact that State Farm has taken several hundred photographs of the vehicle and offered this evidence to GM does not eliminate the severe prejudice to GM of not having the opportunity to conduct its own investigation. *See Silvestri v. General Motors Corp.*, 271 F.3d 583, 594 (4th Cir. 2001) ("To require General Motors to rely on evidence collected by [Plaintiff's] experts in lieu of what it could have collected would result in irreparable prejudice."); *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 946 (11th Cir. 2005) ("[D]irect examination of the vehicle's condition was critically important to this case. Spoliation of the vehicle forced experts to use much less reliable means of examining the product's condition. The district court thus erred in concluding that a simple jury instruction could cure the resulting prejudice to defendant."). Accordingly, the third *Anheuser-Busch* factor weighs in favor of dismissal.

The fourth *Anheuser-Busch* factor— the public policy favoring disposition

of cases on their merits—weighs against dismissal because the sanction of dismissal is case-dispositive. However, this factor standing alone is insufficient to outweigh the other factors. *Leon*, 464 F.3d at 960-61. "Nor is the Court inclined to give great weight to this factor when the spoliation hinders [GM's] ability to investigate and present the merits of the case." *Broan Mfg. Co.*, 523 F. Supp. 2d at 997-98.

Finally, the Court must consider the availability of less drastic sanctions. The Court finds that neither an adverse inference instruction to the jury, nor the exclusion of the relevant evidence, would be adequate to cure the prejudice suffered by GM.

In *Dickinson Frozen Foods*, this Court found that a non-rebuttable adverse inference instruction was adequate where the plaintiff destroyed the evidence that was the subject of the litigation *after* the defendant had been notified of the claim and had had an opportunity to inspect the evidence. *Dickinson Frozen Foods*, 2019 WL 2236080, at *9. The Court distinguished the case from *Unigard* and *Broan*, noting that those cases "both involved a party's destruction of key evidence before the injured party had notice of a potential claim against it," and thus warranted harsher sanctions. *Id.* at *16 (discussing *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363 (9th Cir. 1992) and *Broan Mfg. Co.*, 523 F. Supp. 2d

992).

The present case involves the destruction of evidence that affects the very heart of the matter in dispute prior to GM even being notified of the claim against it, much less having had an opportunity to inspect. Thus, unlike *Dickinson Frozen Foods*, an adverse inference instruction in the present case would not be sufficient.

Nor would the exclusion of State Farm's evidence relating to the vehicle be adequate here. As the *Broan* court noted: "Although lesser sanctions are feasible, they do not cure the prejudice caused to this litigation. Specifically, these lesser sanctions do not address the fact that Defendant has limited evidence available upon which to construct its defense." *Broan Mfg. Co.*, 523 F. Supp. 2d at 998. Here too, exclusion of State Farm's evidence gathered on the vehicle would not address the fact that GM was unable to examine the vehicle with its own experts and is unable to adequately prepare a defense to State Farm's products liability claims. Thus, this final factor also weighs in favor of dismissal.

Accordingly, the Court will grant GM's motion for sanctions, and order that the case be dismissed as a sanction for Plaintiff's spoliation.

## ORDER

**IT IS ORDERED that:**

1. Defendant's Motion for Sanctions Due to Spoliation (Dkt. 49) is GRANTED.

2. This action is DISMISSED with prejudice as a sanction for Plaintiff's spoliation of evidence.

DATED: June 3, 2021

B. Lynn Winmill
U.S. District Court Judge